TURNER and another *v.* HART and another.

*(District Court, D. Kentucky. March 4, 1880.)*

MORTGAGE—REFORMATION FOR UNCERTAINTY—EVIDENCE.—A court of equity will not reform a mortgage for uncertainty or misdescription, when the evidence fails to identify the land intended to be mortgaged.

On pleadings and proofs in equity.

The bill sets forth that in 1878 defendant Hart was adjudicated a bankrupt, and defendant Ward elected his assignee; that on the twenty-second of February, 1876, Hart executed to Hall and Allen a mortgage of real property, described as follows: "One hundred acres of land on the Ohio river, opposite the Diamond Island, and being a part of the same land conveyed to me by Brooks' heirs, as shown by deed of record in the Henderson county clerk's office, in Book P, page 532"; that on the fourteenth of August, 1877, Allen assigned to Hall, his co-mortgagee, all his interest in the mortgage, and on the eighteenth of March, 1879, Hall assigned the same, as well as his own interest, to the complainants.

The bill further alleges that at the time the mortgage was executed the mortgagor, Hart, owned three parcels of land on

the Ohio river, known as the "Brooks land," the "Fuller tract," and the "Carson land," immediately adjoining each other, and that the Brooks land and the Carson land had been originally parts of one and the same tract, known as the Brooks tract; that these three parcels had been considered and treated by Hart as being a single tract, under the name of the "Brooks land," or the land bought of the Brooks heirs; that prior to the execution of the mortgage the parcel marked on the plat annexed to the bill as the "Brooks land," containing 263 acres, and the Fuller tract, 21 acres, had been levied upon by the creditors of Hart, under an execution, and that the levy was in full force at the time the mortgage was executed; that it was then well known, both to Hart and to Hall and Allen, the mortgagees, that almost, if not the whole, of said two parcels would be required to satisfy such levy, and that subsequently they were in fact sold in satisfaction thereof, and complainants became the owners of the same by assignment from the purchasers.

The bill then sets forth the proper description of the lands owned by Hart at the date of the execution of the mortgage, by metes and bounds; that, allowing for accretions on the river front and inaccuracies in former surveys, there remains after the sale upon execution, subject to this mortgage, about 100 acres. The bill further alleges that, at the time of the execution of the mortgage, the words "lands conveyed to me by Brooks' heirs," were understood and intended by the parties to include and embrace the original Brooks tract, and the mortgage was accepted by Hall and Allen under the belief and impression that the said words did so embrace and include all lands owned by said Hart within the boundary hereinbefore set out, and it was the intention and meaning of the parties thereto to give Hall and Allen a lien upon 100 acres of land within the said boundary, without reference to the subdivisions as shown by the map, and if such mortgage does not give such lien to Hall and Allen, and to the complainants, as their assignees, it is because of a mistake or inadvertence in reducing the same to writing, and it does not correctly embrace and express the intention and understand-

ing of the parties; that if the mortgage is construed to be limited to the Brooks land, complainants will lose almost the whole of their debt against Hart, as such mortgage will cover only about 14 acres.

The bill prays that the words used in the mortgage, "the land conveyed to me by Brooks' heirs," be construed and held to mean all the lands within the aforesaid boundary owned at the time of the execution thereof by Hart, and that the mortgage may be reformed so as to express the true intention and meaning of the parties and for foreclosure.

Defendant Ward answers, admitting the bankruptcy, the execution of the mortgage, the levy of the execution and the sale, and the subsequent purchase by complainant; alleges that it was not the intention of the parties to convey the entire interest of Hart in the three parcels; that it was known that said execution amounted to less than $2,000, and that the two tracts covered by the levy were worth $5,000, and that they were sold at less than one-third of their appraised value. He denies that there is now only about 100 acres of unsold land in the three tracts, but avers that the same amounts to at least 160 acres. He avers that the mortgage was only intended to cover 100 acres of the 263 acres described upon the map as the "Brooks land;" and that, at the time, this land was considered and was in fact ample security for the mortgage, as well as the levy; denies any mistake in the execution of the mortgage, and says it is actually as it was intended at the time to make it, and that the change suggested in the bill was only an afterthought; and further submits that complainants' mortgage is wholly void because of its indefiniteness; that it does not sufficiently describe any land, or identify any part of the Brooks tract.

*D. W. Armstrong*, for complainants.

*Walter Evans*, for defendants.

Brown, J. It seems that the original Brooks tract, upon the Ohio river, consisted of a parcel described upon the map as the "Brooks land," 263 acres; the second parcel, known as the "Fuller tract," 21 acres; and of a third tract, known

as the "Carson Land," of 50 acres; that these, before the execution of the mortgage, all came into the possession of the bankrupt Hart, but by two different deeds. The description of the mortgage to Hall and Allen is exceedingly indefinite upon its face: "100 acres of land upon the Ohio river, opposite the Diamond Island, and being part of the same land conveyed to me by Brooks' heirs, as shown by deed recorded in Henderson county clerk's office, Book P, p. 532." The only thing rendered certain by this description is, that it was intended to be 100 acres out of 263 acres conveyed by the Brooks heirs, by the deed specified in the description, but *which* 100 acres of the 263 the deed fails to specify. If the bill sought merely to identify 100 acres out of the 263 in the Brooks' tract, I think it might be sustained by parol evidence of the precise portion of this tract intended to be conveyed. But, as I understand, the bill seeks to include another tract of land obviously excluded by the description in the mortgage, and not even then to identify in any other way the particular 100 acres intended to be conveyed, but generally to sweep up in favor of the complainants everything that they have not already acquired by their purchase from the bidder under the execution.

I see no reason to doubt that this case stands substantially as it would have stood if the bill had been filed by Hall and Allen, the mortgagees, against Hart, the mortgagor. Complainants are the assignees of Hall and Allen, and are vested with their rights under the mortgage, which was duly acknowledge and recorded. Defendant Ward is the assignee in bankruptcy of Hart, and takes his interest in the land subject to all equities. Indeed, except in cases of fraud, where he represents the creditors as well as the bankrupt, his title is that of the bankrupt himself, nor have I any doubt that where a mistake has been made in the description of the land in a deed, that such deed may be reformed, as between the original parties, if the mistake can be shown by clear and convincing testimony. Thus, if A. conveys to B., a lot of land to which he had no title, B. may show that it was understood that another lot was intended to be conveyed, to which he had

a title, but to authorize such a reformation it should be shown that the parties had distinctly in their minds what was intended to be conveyed. For instance, if the deed be 100 acres out of a 500 acre tract, evidence might be introdued to show which 100 acres was to be included; but if, at the time the deed was executed, no particular portion of the tract was intended to be conveyed, I do not see how it is possible, by parol evidence, to sustain the deed, unless it be considered that the parties were to be tenants in common— the grantor of four-fifths and the grantee of one-fifth. The evidence in this case not only seeks to go outside of the Brooks land of 263 acres, but to include other lands formerly belonging to the Brooks heirs. It, therefore, not only contradicts the deed, but fails to locate or describe definitely the land intended to be conveyed.

Mr. Allen, one of the mortgagees, testified that he thought when the mortgage was executed that it covered a part of the Brooks tract reputed to belong to J. B. Hart, in the Diamond Island Bend: "I understood that the land was one tract, and, I thought, conveyed to Hart as one tract, known as the Brooks tract, and conveyed by the Brooks heirs. I intended, and I thought Mr. Hart intended, that the mortgage should be on 100 acres of the entire land owned by Hart, and I so believed. I did not know that Hart held his land in Henderson county under more than one deed. I can't say that I ever saw any title papers conveying this land to Hart, and I believe my information is altogether hearsay. I have for years past heard him claim land in the Diamond Island Bend, and my recollection is that it was about 300 acres, and it was called 'the Brooks tract.' And I have no recollection of hearing it called by any other name."

Mr. Hart, the mortgagor, says: "I owned three tracts of land, containing, according to my deeds, 434½ acres, less 100 acres sold off. The three tracts originally belonged to one Brooks, who had conveyed by title bond the 50 acre tract to one Carson. I bought two tracts from the Brooks heirs and the other tract from Carson's heirs, and I held and considered the three tracts as one tract, under the name of the

'Brooks land.' I intended to mortgage the balance of the Brooks land, as stated above, not included in the levy of the sheriff, for the debt owing to the Farmers' Bank. I considered that the entire possession was to be understood as the land conveyed to me by the Brooks heirs, and called it all the Brooks land. I knew, at the time the mortgage was given, that the land had been conveyed to me by different parties and different deeds, but don't know what the mortgagees knew about it. Mr. H. F. Turner was my attorney, and I think understood the title to the land, as he platted the whole tract from a survey made in 1862, I think. He may have been Allen's or Hall's attorney; I don't know it. He did not prepare the mortgage."

Question. "Did you tell Turner, in any of these conversations, that a part of your land had been conveyed by other parties than the Brooks; did he know that a part of it had been conveyed by Carson?" Answer. "Yes, sir; he knew that a part of the land was conveyed by the Carson heirs, before he purchased. I think I explained to him all the facts in relation to the land; the title, the mortgages as they are now understood. I know I talked with his father about the mortgage, and the sale to the bank. I think Turner understood it. I think I told him, before Turner bought the mortgage, that it was intended to cover 100 acres of the entire land I owned on the Ohio river."

Q. "After the sale to the bank of said land, and the deed made on the twenty-first of September, 1877, by the sheriff to the bank, of said land, did you claim the said land or hold it adverse to said bank?" A. "Only so far as the land exceeded the amount; the number of acres levied upon by the sheriff, and sold by him."

Marshal, one of the complainants, testifies: When we bought the land, I thought there was only one tract known as the Brooks tract, but there was 100 acres more in the tract than we bought, and one Hall had a mortgage on the same. We were advised by Turner to see Hall and purchase his mortgage, in order to get the entire tract, and we did see Hall, and purchased the mortgage from him. The part of

the tract known as the Carson tract has about 15 acres cleared, the rest in wild woods; no improvement on it."

Now this testimony not only does not show that any particular 100 acres was intended to be conveyed, but it seeks to include lands obviously not included in the mortgage, and in direct conflict with the description contained in it. Nor does the evidence now enable us to describe the lands by metes and bounds, or otherwise to identify it, and it would be impossible to render a decree for the reformation of the mortgage by identifying the lands.

It is true, the witnesses declare that it was intended to convey all that was left of the original Brooks tract not covered by the sheriff's deed, but that deed is not produced, nor is any attempt made to identify the land covered by the sheriff's levy and sale, so that if we should decree that complainants were entitled to all the tract except that covered by the sheriff's deed, we should still be unable to identify or separate the land covered by the mortgage. Obviously, the sheriff did not intend to sell an undivided part of the entire estate. He did intend to sell something that could be identified and could be included by metes and bounds; but *what*, the record does not show us, and hence it would be utterly impossible in this case to identify the land intended to be covered by the mortgage.

It seems that the parties had very little idea what they were about when this mortgage was executed, and the court is in no condition to solve that doubt. If the mortgage is to be reformed for uncertainty or misdescription, the evidence ought at least to be such as to enable us to identify and separate the land intended to be conveyed. The testimony in this case wholly fails to do this, and for this reason, if for no other, the bill must be dismissed.